1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10                      **WESTERN DIVISION**
11

12 DANIEL P. DECOUD,           )   No. CV 04-10492-PLA
                          )
13             Plaintiff,    )
                          )
14          v.           )   **MEMORANDUM OPINION AND ORDER**
                          )
15 JO ANNE B. BARNHART,     )
COMMISSIONER OF SOCIAL    )
16 SECURITY ADMINISTRATION,   )
                          )
17            Defendant.   )
                          )
18 ─────────────────────────────

19                       **I.**
20                   **PROCEEDINGS**

21       Plaintiff filed this action on December 29, 2004, seeking review of the Commissioner's
22 denial of his application for Disability Insurance Benefits.  The parties filed a Consent to proceed
23 before the undersigned Magistrate Judge on January 25, 2005.  Pursuant to the Court's Order,
24 the parties filed a Joint Stipulation on December 23, 2005, that addresses their positions
25 concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under
26 submission without oral argument.
27 /
28 /

## II.

## BACKGROUND

Plaintiff was born on January 12, 1964. [Administrative Record ("AR") at 42.] He has attended one year of college, and has past work experience as an aircraft mechanic. [AR at 54, 59, 65-66.]

On November 19, 2002, plaintiff filed an application for Disability Insurance Benefits, in which he alleged that he has been unable to work since December 23, 1999, due to a total hip replacement and the need for a knee replacement. [AR at 27, 42-44, 52-61.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").   A hearing was held on September 11, 2003, at which plaintiff appeared without counsel and testified on his own behalf. [AR at 111-32.] A vocational expert also testified. On October 22, 2003, the ALJ determined that plaintiff was not disabled because he retains the ability to perform medium work activity.[1] [AR at 18-25.] When the Appeals Council denied review on November 23, 2004, the ALJ's decision became the final decision of the Commissioner.  [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c) and 416.967(c).

2

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  <u>Drouin</u>, 966 F.2d at 1257; <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1040-41 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

## IV.

## <u>THE EVALUATION OF DISABILITY</u>

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 19.]  At step two, the ALJ concluded that plaintiff has the following severe impairments: status post reconstruction of the left knee, posttraumatic arthritis of the left knee, degenerative joint disease of the left knee, status post total hip replacement of the left hip, and left hip arthrosis. [AR at 21.]  At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 20.]  The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform medium[3] work with certain restrictions.[4] [AR at 21.]  At step four, the ALJ

---

[2]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[3]    In the body of the opinion, the ALJ indicated that plaintiff can perform "light" level work on a sustained basis. [AR at 21.] In his conclusion, he wrote that plaintiff can perform "medium" work on a sustained basis. [AR at 24.] In light of the ALJ's finding that plaintiff can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, the Court assumes that the reference to "light" work was an error.  See fn. 1, supra.

[4]    The ALJ found that plaintiff can "stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; push and pull fifty pounds occasionally and twenty-five pounds frequently; occasionally climb, balance, stoop, kneel, crouch and crawl; and can occasionally walk on uneven terrain." [AR at 21.]

4

1  determined that plaintiff is unable to perform his past relevant work.  [AR at 20, 22.]  At step five,

2  the ALJ concluded that based on plaintiff's residual functional capacity, there are a significant

3  number of jobs in the national economy that he can perform. [AR at 22-23.]  Accordingly, the ALJ

4  found plaintiff not disabled. [AR at 23-24.]

5

6                                                    **V.**

7                                        **THE ALJ'S DECISION**

8          Plaintiff contends that the ALJ: (1) improperly rejected a portion of the examining

9  physician's opinion; and (2) improperly assessed plaintiff's credibility. Joint Stipulation ("Joint

10  Stip.") at 4. For the reasons discussed below, the Court respectfully disagrees with plaintiff, and

11  affirms the Commissioner's decision.

12

13  **A.     THE EVIDENCE**

14         At the hearing, plaintiff testified that he had knee surgery in 1984, and a hip replacement

15  in 1993. [AR at 115-16.] Since 1999, he has not had many treatments on his knee.  He has done

16  some therapy, including swimming, which he does almost every day "or as much as [he] can."  He

17  indicated that he cannot do any running or any type of exercise, and that his doctor says his knee

18  needs to be totally replaced.  When he "rest[s] up," plaintiff does not need to use a cane, but if he

19  is active, he will use a cane at times. [AR at 115.] His last treatment was 2 months prior to the

20  hearing, at which time he was given some pain relievers and was told that there was not much that

21  could be done to his knee other than replace it. [AR at 116.] Plaintiff takes Darvocet 4 days a week

22  when the pain gets bad; other times he takes prescription Motrin, taking 4 to 6 Motrin a day. [AR

23  at 116-18.] His pain varies from his lower back area down to his knee on the left side, the severity

24  of which he rates as a 6 on a scale of 10. [AR at 118.] He drives twice a week to pick his daughter

25  up from school, can wash and fold his clothes, and does the dishes. [AR at 119-20.] He does not

26  do the grocery shopping.  He swims, and spends 6 hours a day on the computer. [AR at 120.]

27  Plaintiff testified that he is "very strong," but that his doctor limited him to carrying 50 pounds. [AR

28  at 121.] He can stand on average 30 minutes to an hour, and can sit for 2 to 3 hours at a time. [AR

at 122.] Plaintiff further testified that he cannot stand, sit and walk for 8 hours a day, 5 days a week, because sitting at certain times bothers his hip, and sometimes he has to lie down.  In the course of a day, he lies down a couple of hours to rest, depending on his activities.  He can be up and about walking, standing and doing activities for about 30 minutes to an hour before he needs to lie down and rest for an hour or two.  This occurs 3 times a day.  [AR at 125-26.]

In his Daily Activities Questionnaire, completed in December, 2002, plaintiff indicated that: 1. he can groom, bathe and dress himself; 2. his only hobby is swimming; 3. when he cannot walk he cannot do much of anything; 4. he takes the medications Naprosyn, Motrin, and Clinoril; and 5. his doctor gave him a knee brace and crutches. [AR at 73-75.] In a Pain Questionnaire completed at the same time, plaintiff wrote that he has shooting pains in his left knee and hip which sometimes are throbbing and constant, and sometimes occur only when he walks.  The pain is brought on from being in the same position for too long, being in a cramped position, walking, and sometimes it "just hurts."  Nothing seems to help this pain.  The amount of time that he can walk, stand, and sit varies, and he is sometimes able to do light housekeeping chores without assistance. [AR at 76-78.]

One of the hypotheticals presented by the ALJ to the vocational expert included plaintiff's stated limitations of the need to lie down during the course of a day for a couple of hours at a time depending on his activities.  The vocational expert indicated that this would preclude plaintiff's former work and any other work. [AR at 131.]

**B.    DR. WINTER'S OPINION**

On December 28, 2002, an orthopedic evaluation of plaintiff was conducted by Dr. Lance Winter. [AR at 95-98.] Dr. Winter noted that plaintiff has been off work since 1999, when he hyper-extended his left knee.  Plaintiff told Dr. Winter that he can run, "although this intermittently causes him pain and swelling of the left knee, [which] is relieved by rest."  He also indicated that he takes Motrin as needed "with good effect."  Dr. Winter noted that plaintiff was not receiving any current treatment, was not wearing a brace of any type and did not require an assistive device of any kind for walking at that time. [AR at 95.] Dr. Winter also noted that at the time of the examination

plaintiff was in no acute distress.  He ambulated without difficulty, without a limp, and without support or the help of a cane.  He was able to walk on his toes and heels, and could squat completely and recover to a standing position without help or support. [AR at 96.] An examination of plaintiff's hips revealed no deformity or masses, no tenderness or swelling, and his left hip "showed range of motion from 0 to 80 degrees of flexion." An examination of plaintiff's knees showed a range of motion of 0 to 120 degrees, with no effusion of the knee.  There was no pain to palpation anywhere around the knee.  There was, however, "significant quadriceps atrophy" of the left knee. [AR at 96.] X-rays of the left knee showed moderate degenerative joint disease with osteophyte formation, and a mild decrease in joint space.  Dr. Winter evaluated plaintiff with left knee posttraumatic arthritis and degenerative joint disease.  He concluded that plaintiff could lift, push, pull and carry 50 pounds occasionally and 25 pounds frequently, and could walk and stand up to four hours per day.  He had postural limitations in bending, kneeling, stooping, crawling, and crouching, which could be done on an occasional basis, as could walking on uneven terrain. Dr. Winter concluded that plaintiff "may return to work in two months." [AR at 97.]

Plaintiff argues that since Dr. Winter noted that plaintiff had not worked since December, 1999, and then "opined that [he] could not perform any work activity for an additional two months" following the examination, Dr. Winter was thus concluding that plaintiff was unable to work from December, 1999, until February, 2003.  Joint Stip. at 6.  The ALJ did not discuss this aspect of Dr. Winter's opinion, and plaintiff argues that he is entitled to a closed period of benefits for that time frame.  The Court rejects this contention.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  Lester, 81 F.3d at 830.  The opinion of an examining physician such as Dr. Winter is entitled to greater weight than the opinion of a non-examining physician, and the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician.  Id., 81 F.3d at 830-31.

1    Here, from the fact that Dr. Winter was aware that plaintiff had not worked since 1999, and

2    that he advised that plaintiff would be able to return to work in another two months, plaintiff

3    extrapolates that Dr. Winter believed that plaintiff was unable to work for that entire three year-

4    plus period.  Plaintiff contends that the ALJ did not provide clear and convincing reasons to reject

5    this portion of Dr. Winter's opinion.  While Dr. Winter offers no explanation for his conclusion that

6    plaintiff "may return to work in two months," nothing in his examination or his conclusions about

7    plaintiff's functional limitations indicates that plaintiff is disabled to the extent he cannot work, and

8    certainly not to the extent that his impairment had prevented work for the ten months or longer

9    prior to the examination to satisfy the twelve-month disability requirements.  Dr. Winter's report

10   does not reflect an opinion by him that plaintiff could not work since 1999, but just relates his

11   understanding that plaintiff had not worked since then.  At most, Dr. Winter was opining that,

12   based on plaintiff's condition at the time of the examination, he could then carry out certain

13   functions and would be able to work in two months.  Indeed, Dr. Winter concluded that plaintiff

14   could perform the equivalent of medium level work with certain limitations at that time.  Neither

15   was Dr. Winter in a position to evaluate plaintiff's alleged disability from 1999 until the time of the

16   examination based on anything other than plaintiff's statements, as he had never before examined

17   plaintiff, and indicated that plaintiff's "past medical history is noncontributory." [AR at 95.] Further,

18   to the extent plaintiff is relying on Dr. Winter's conclusion that plaintiff could not work for two

19   months, defendant is correct that an opinion as to whether an individual is disabled is reserved

20   for the Commissioner.  See 20 C.F.R. § 404.1527(e)(2).  The functional capacity he found to exist

21   based on his examination served to allow the ALJ to determine plaintiff's ability to work. Finally,

22   that Dr. Winter believed plaintiff could return to work as an aircraft mechanic in two months does

23   not mean that he could not perform any other work during that time frame.  Disability has not been

24   established by Dr. Winter's statement.

25       Dr. Winter's opinion, that of a non-treating source, is substantial evidence in this case, as

26   it is based on his independent clinical findings.  Any conflict in his report was up to the ALJ to

27   resolve.  See Andrews, 53 F.3d at 1041. Here, the ALJ extensively discussed the medical

28   evidence presented by Dr. Winter, and adopted the opinion of Dr. Winter regarding both plaintiff's

8

1  residual functional capacity and his diagnosis of plaintiff's impairments.  [AR at 20-21.] The Court

2  finds no basis supported by the record for plaintiff's assertion that the ALJ failed to adequately

3  evaluate a portion of Dr. Winter's opinion.[5]  Remand is not warranted on this issue.

4

5  **C.   PLAINTIFF'S CREDIBILITY**

6          The ALJ rejected plaintiff's allegations of limitations for multiple reasons: 1) plaintiff's

7  allegations of significant limitations are not borne out in his description of his daily activities; 2)

8  there was no evidence of sleep deprivation due to pain; 3) there was no evidence of severe weight

9  loss because of loss of appetite due to pain; 4) plaintiff admitted that he swims daily even though

10 he cannot perform physical activities; 5) he admitted he spends at least 6 hours a day on his

11 computer despite allegations that he has severe pain if he remains in one position for too long; 6)

12 plaintiff reported being prescribed crutches and a knee brace, but he was not wearing either when

13 he saw Dr. Winter; 7) he was able to ambulate without difficulty with no limp, and with no assistive

14 device; 8) despite his allegations of severe pain, the evidence reveals that plaintiff only received

15 over-the-counter medications and non-steroidal anti-inflammatories, and he has not sought regular

16 treatment for pain; 9) no physician opined that plaintiff's pain cannot be controlled with

17 conservative treatment; 10) no physician opined that plaintiff is permanently and totally disabled;

18 and 11) the objective medical evidence does not reflect the existence of an impairment that would

19 produce the sort of symptoms alleged by plaintiff. [AR at 21-22.] Plaintiff argues that these

20 grounds were insufficient to reject his allegations of disabling pain.  The Court disagrees.

21

22          [5]   In any event, in January, 2003, a state agency physician concluded that plaintiff could

23 occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, could stand and/or
   walk 4 hours with normal breaks in an 8 hour work day, and sit about 6 hours in an 8 hour work

24 day. [AR at 99-106.] The physician opined that the severity or duration of plaintiff's symptoms is
   disproportionate to the expected severity or expected duration on the basis of plaintiff's medically

25 determinable impairments. [AR at 104.] The opinion of a non-examining physician can provide the

26 basis for an ALJ to reject the opinion even of a treating physician, as long as there is other
   evidence in the record to support the non-examining physician's findings.  Such evidence exists

27 in this case to support the opinion of the non-examining physician, as these findings were
   corroborated by the opinion of Dr. Winter, which in turn was based on independent clinical

28 findings.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

Because plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are therefore not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider the following factors in weighing a plaintiff's credibility:  (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041.  If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff's credibility needed to be clear and convincing to withstand reversal or remand. Benton, 331 F.3d at 1040.  The Court concludes that while some of the reasons provided by the ALJ do not meet the clear and convincing standard, others do.  First, although the lack of objective medical evidence to support the symptoms alleged by a claimant cannot be the sole reason to discredit testimony, it certainly can be one reason that can be considered to reject such testimony.  "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is

just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 164-65 (10th Cir. 1987) (emphasis added) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986)); see also Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991) (en banc) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added).  Here, the record is limited at best as to objective evidence that would support plaintiff's claims that, while he can do some activities, he must lie down for extended periods of time each day after he exerts himself.  It appears that the main piece of evidence is an x-ray of plaintiff's knee showing degenerative joint disease.  But the physician who reviewed that x-ray and made the diagnosis opined that plaintiff could do a wide array of postural activities on an occasional basis.  No indication of a need to lie down, or of disabling pain, is presented.

Next, the ALJ appropriately noted that no physician has opined that plaintiff is permanently or totally disabled.  While plaintiff argues that Dr. Winter did just that by finding that he could return to work in another two months, as discussed above, Dr. Winter also concluded that plaintiff was capable of performing all the functions necessary to carry out medium level work.  The only other medical report in the record -- from a December, 1998, examination performed by Dr. Daniel Capen [AR at 86-92] -- concludes that plaintiff "is working and may continue to work." [AR at 91.] This reason thus suffices. See, e.g., Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (a physician's opinion that a claimant could do sedentary work is a valid and specific reason to reject a claim of excessive pain).  The ALJ also correctly notes that no physician opined that plaintiff's pain cannot be controlled with conservative treatment.  It appears that conservative treatment -- or no treatment at all [see AR at 95] -- is the only type of treatment that plaintiff has been receiving for the pain.  Indeed, the record is silent as to any records of multiple or frequent visits to doctors, consistent receipt of prescription medications, or therapy of any kind.  While Dr. Capen in 1998 found a need "for further care and treatment" [id.], there is no indication in the record that plaintiff obtained any such treatment. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack

1  of treatment for an allegedly disabling condition is a valid reason to reject pain testimony). Next,

2  Dr. Winter noted that plaintiff was able to ambulate without difficulty, with no limp, and without any

3  assistive device. The ALJ appropriately relied on plaintiff's lack of perceived limitations to reject

4  his claims of pain. See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ can

5  consider discrepancies between the claimant's statements and the objective evidence in the

6  record in making a credibility finding). The Court further notes that plaintiff was able to walk on

7  his toes and heels and squat completely and recover to a standing position without help or

8  support. [AR at 96.][6] Thus, although the ALJ includes reasons to reject plaintiff's credibility that

9  are inadequate, he points to other clear and convincing reasons why he rejected plaintiff's

10  testimony. Accordingly, his credibility finding will be afforded "great deference" and will not be

11  disturbed.

12  /

13  /

14  /

15  /

16  /

17  /

18  /

19  **VI.**

20  **CONCLUSION**

21  _____

22  [6]  The Court discounts some of the other reasons provided by the ALJ, including: 1. reliance
    on plaintiff's daily activities (the Court is not persuaded that plaintiff's ability to bathe and dress
23  himself, do the laundry, and occasionally drive, undermine his subjective complaints as these
    rather minimal activities do not appear to be strongly related to the rigors of the typical work
24  setting); 2. swimming on a daily basis (it appears that plaintiff swims as therapy for his hip and
    knee [AR at 115], and he should not be penalized for carrying out activities for therapeutic reasons
25  (see Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001)); 3. no evidence of sleep deprivation
    or weight loss from the pain (but plaintiff is not alleging an inability to sleep or severe weight loss
26  because of loss of appetite due to pain. The objective evidence shows, however, that there is
    significant atrophy of his leg at the left knee area -- a sign of the impact of his impairment on his
27  body); and 4. that he spends at least 6 hours a day on his computer despite severe pain if he
    remains too long in one position (plaintiff never said that he sits for 6 hours in one stretch).

28

1

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the

2

alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

3

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

4

Judgment herein on all parties or their counsel.

5

6

DATED: March 24, 2006                                             /s/

7

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28